ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,
    Plaintiff-Respondent,

                                        )
                                        )
                                        )
vs.                                     )
                                        )      Criminal Case: CR-89-874-TJH
                                        )
                                        )
HECTOR TAPIA ANCHONDO,                  )
    Defendant-Movant.                   )
_____            )

FILED
CLERK, U.S. DISTRICT COURT
NOV - 6 2019
CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

## MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)

Comes now, **HECTOR TAPIA ANCHONDO,** pro-se, Movant, respectfully moves this Honorable Court pursuant to 18 U.S.C. § 3582(c)(1)(A), for an Order reducing his term of inmprisonment from life, to time served based on the following reasons.

## JURISDICTION

A. **THIS COURT HAS AUTHORITY TO RESENTENCE TAPIA UNDER SECTION 18 U.S.C. § 3582 (c)(1)(A)(i) FOR THE EXTRAORDINARY AND COMPELLING REASONS PRESENTED HEREIN.**

With the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners to time served under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons," and the reasons that can justify resentencing need not involve only medical, elderly, or family circumstances.

When Congress originally enacted § 3582 in 1984, it intended for district courts to reduce sentences for prisoners on the basis of exordinary and compelling reasons not limited to medical, family, or elderly circumstances. Congress first enacted the modern form of the compassionate release statute contained in 18 U.S.C. § 3582 as part of the Comprehensive Crime Control Act

of 1984.  Section 3582(c) states that a district court can modify even a final "term of imprisonment" in four situations, the broadest of which is directly relevant here.  A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  In 1984, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons.  Id.

Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under § 3582(c).  But the legislative history gives an indication of how Congress thought the statute should be employed by federal courts.  One of Congress's initial goals in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52, n. 74 (1983).  Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stressed how some individual cases may still warrant a second look at resentencing:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances.  These would include cases of severe illness, cases in which other  extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the defender was convicted have been later amended to provide a shorter term of imprisonment.

Id. at 55, 56 (emphasis added).  Rather than having the Parole Commission review every federal sentence focused only on an offender's rehabilitation, Congress decided that § 3582(c) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment."  Id. at 65.

Congress intended for the situations listed in § 3582(c) to act as "safety

valves for modification of sentences," Id.at 121, that enable sentence reductions when justified by various factors that previously could have been addressed through the (now abolished) parole system.  This particular safety valve would "assure the availability of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guidelines." Id.  Noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, the statute permitted "later review of sentences in particularly compelling situations." Id.  (emphasis added).

Congress thus intended to give federal sentencing courts an equitable power that would be employed on an individualized basis to correct fundamentally unfair sentences.  And there is no indication that Congress limited the safety valve of § 3582(c)(1)(A) to medical or elderly release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep. No. 98-225, at 55-56.

**B.    THE UNITED STATES SENTENCING COMMISSION CONCLUDED THAT § 3582(c)(1)(A)'S EXTRAORDINARY AND COMPELLING REASONS FOR COMPASSIONATE RELEASE ARE NOT LIMITED TO MEDICAL, ELDERLY, OR FAMILY CIRCUMSTANCES.**

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission ("Commission").  See 28 U.S.C. § 994(t) ("The Commission...shall describe what should be considered extraordinary and compelling reasons for sentence reduction,  including the criteria to be applied and a list of specific examples.").  Congress provided only one limitation to that delegation of authority:"[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t)  (emphasis added).

Congress no doubt limited the ability of rehabilitation alone to constitute extraordinary circumstances so that sentencing courts could not use it as a full and direct substitute for the abolished parole system. Congress, however, contemplated that rehabilitation could be considered with other extraordinary and compelling reasons sufficient to resentence people in individual cases. Indeed, the use of the modifier "alone" signifies just the opposite: that rehabilitation could be used in tandem with other factors to justify a reduction.

The Commission initially neglected its duty, leaving the BOP to fill the void and create the standards for extraordinary and compelling reasons warranting resentencing under § 3582(c)(1)(A).[1] The Commission finally acted in 2007, promulgating a policy that extraordinary and compelling reasons includes medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, application note 1(A). After a negative DOJ Inspector General Bureau of Prisons' Compassionate Release Program (Apr. 2013) ("FBOP Compassionate Release Program"), the Commission amended its policy statement, expanding the guidance to courts on qualifying conditions and admonishing the BOP to file motions for compassionate release whenever a prisoner was found to meet the objective criteria in U.S.S.G. § 1B1.13. Id. at application note 4; see also United States v. Dimasl, 220 F.Supp. 3d 173, 175 (D. Mass. 2016) (discussing the progression from the OIG report to new "encouraging" guidelines).

The Commission created several categories of qualifying reasons: (A)

---

1. BOP promulgated policies governing compassionate release. The latest version prior to passage of the First Step Act was Program Statement 5050.49, Compassionate Release/Reduction in Sentences (Mar. 25, 2015).

"Medical Conditions of the Defendant," including terminal illness and other serious conditions and impairments; (B) "Age of the Defendant," for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment; (C) "Family Circumstances," where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver, and (D) "Other Reasons," when the Director of the BOP determines there is "an extgraordinary and compelling reason other than, or in combination with  the reasons described in subdivisions (A) through (C)." Id., application note 1(A). The Commission also clarified that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, application note 2.  In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." Id.

Consistent with the text and legislative history of § 3582(c), the Commission concluded that reasons beyond medical, age, and family circumstances could qualify as "extraordinary or compelling reasons" for resentencing, and that the extraordinary or compelling reasons need not be based on changed circumstances occurring after the initial sentencing of the defendant.

C.   THROUGH THE FIRST STEP ACT, CONGRESS CHANGED THE PROCESS FOR COMPASSIONATE RELEASE BASED ON CRITICISM OF BOP'S INADEQUATE USE OF IT'S AUTHORITY TO ACT ON ITS OWN TO REDUCE SENTENCES FOR "EXTRAORDINARY AND COMPELLING REASONS."

Prior to Congress passing the First Step Act, the process for compassionate release under § 3582(c)(1)(A) was as follows: "the U.S. Sentencing Commission set the criteria for resentencing relief under § 3582(c), and the only way a sentencing court could reduce a sentence was if the BOP

Director initiated and filed a motion in the sentencing court. See PL 98, 473
(HJRes 648), PL 98 473, 98 Stat. 1837 (Oct. 12, 1984). If such a motion was
filed, the sentencing court could then decide where "the reduction was
justified by 'extraordinary and compelling reasons' and was consistent with
applicable policy statements issued by the Sentencing Commission." Id. So
even if a federal prisoner qualified under the Commission's definition of
extraordinary and compelling reasons, without the BOP Director's filing a
motion, the sentencing court had no authority to reduce the sentence, and the
prisoner was unable to secure a sentence reduction. This process meant that,
practically, the BOP Director both initiated the process and set the criteria
for whatever federal prisoner's circumstances the Director decided to move
upon.[2] Leaving the BOP Director with ultimate authority for triggering and
setting the criteria for sentence reductions under § 3582(c)(1)(A) created
several problems. The Office of the Inspector General found that the BOP
failed: to provide adequate guidance to staff on the criteria for
compassionate release, to set timelines for reviewing compassionate release
requests, to create formal procedures for informing prisoners about
compassionate release, and to generate a system for tracking compassionate
release requests. See FBOP Compassionate Release Program, at iv. As a result

---

2.    The Department of Justice has recognized that, prior to the passage of the
First Step Act, BOP (and not the Commission) functionally had final say on what
constituted an "extraordinary and compelling reasons" for a sentence reduction,
because only BOP could bring a motion under the terms of § 3582(c)(1)(A). See
Dep't of Justice, Letter to U.S. Sentencing Commission Chairman Hinojosa (July
14, 2007) (noting that because Congress gave BOP the power to control which
particular cases will be brought to a court's attention, "it would be senseless
[for the Commission] to issue policy statements allowing the court to grant
such motions on a broader basis than the responsible agency will seek them").

of these problems, the OIG concluded that "BOP does not properly manage the compassionate program, resulting in inmates who may be eligible candidates for release not being considered." Id.; General Stephen R. Sady & Lynn Deffebach, Second Look Resentencing Under 18 U.S.C. § 3582(c) as an Example of Bureau of Prisons Policies That Result in Overincarceration, 21 FED. SENT. RPTR. 167 (Feb. 2009).

Congress heard those complaints. In late 2018, Congress passed the First Step Act, part of which transformed the process for compassionate release under §3582(c)(1)(A). See P.L. 115-391, 132 Stat 5194, at §603 (Dec. 21, 2018). Section 603 of the First Step Act changed the process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now resentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3852(c)(1)(A). Once the defendant who has properly exhausted files a motion, a court may, after considering the 18 U.S.C. § 3553(a) factors, resentence a defendant, if the court finds that extraordinary and compelling reasons warrant a reduction. Id. Any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." Id. The effect of these new changes is to allow federal judges the ability to move on a prisoner's compassionate release application even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner.

Congress made these changes in an effort to expand the use of compassionate release reductions under § 3582(c)(1)(A). Congress labeled these changes, "Increasing the Use and Transparency of Compassionate

Release." 164 Cong. Rec. H10346, H10358 (2018) (emphasis added). Senator Cardin noted in the record that the First Step Act made several reforms to the federal prison system, including that "[the] bill expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164  Cong. R. 199, at S7774 (Dec. 18, 2018) (emphasis added) In the House, Representative Nadler noted that First Step included "a number of very positive changes, such  as...improving application of compassionate release, and providing other measures to improve the welfare of Federal inmates."  164 Cong. Rec. H10346-04, H10362 (Dec. 20, 2018) (emphasis added).

Federal judges now have the power to order reductions of sentences even in the face of BOP resistance or delay in the processing of applications. The legislative history leading up to the enactment of the First Step Act compassionate release statute as the essential adjudicator of compassionate releaserequest, but also to grant sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable statute.

**D.   STATUTORY TEXT DEFINES JUDICIAL SENTENCE REDUCTION AUTHORITY AROUND "EXTRAORDINARY AND COMPELLING REASONS," AND THE POLICY STATEMENTS OF THE U.S. SENTENCING COMMISSION UNDER § 1B1.13 DO NOT PRECLUDE THIS COURT FROM RESENTENCING TAPIA.**

Once a prisoner has properly pursued administrative remedies and filed a motion for compassionate release, a federal court possesses authority to reduce a sentence if and whenever the court finds "extraordinary and compelling" reasons warrant such a reduction.  A court must consider the 18 U.S.C. § 3553(a) sentencing factors in reducin any sentence, and any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.

§ 3582(c)(1)(A).

As noted above, the Sentencing Commission created a catch-all

provisions for compassionate release under U.S.S.G. § 1B1.13, application

note (1)(D), which states:

> **Other Reasons.** As determined by the Director of the Bureau of Prisons,
> there exists in the defendant's case an extraordinary and compelling
> reason other than, or in combination with, the reasons described in
> subdivisions (A) through (C).

The Commission also stated the process by which compassionate release

reductions should be decided:  Motion by the Director of Bureau of Prisons.

A reduction under this policy statement may be granted only upon motion by

the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A).

U.S.S.G. § 1B1.13, application note 4.

The dependence on BOP in these policy statements is a relic of the

prior procedure that is now inconsistent with the First Step Act's amendment

of § 3582(c)(1)(A).  Application note 9(D) can no longer limit judicial

authority to cases with an initial determination by the BOP Director that a

prisoner's case presents extraordinary and compelling reasons for a

reduction, because the First Step Act has allowed courts to consider and

grant sentence reductions even in the face of an adverse or unresolved BOP

determination concerning whether a prisoner's case is extraordinary or

compelling.  See 18 U.S.C. § 3582(c)(1)(A), as amended by P.L. 115-391 §

503 (Dec. 21, 2018).  And the Commission's now-dated statement indicating

that the BOP must file a motion in order for a court to consider a

compassionate release sentence reduction no longer controls in the face of

the new statutory text enacted explicitly to allow a court to consider a

reduction even in the absence of a BOP motion.  Id.  With the First Step

Act, Congress decided that federal judges are no longer constrained or

controlled by how the BOP Director sets its criteria for what constitutes extraordinary and compelling reasons for a sentence reduction. Consequently, those sections of the application notes requiring a BOP determination or motion are not binding on courts. Stinson v. United States 508 U.S. 36, 38 (1993) ("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authroitative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). Put differently, now that the First Step Act has recast the procedural requirements for a sentence reduction, even if a court finds there exists an extraordinary and compelling reason for a sentence reduction without the BOP Director's initial determination, then the sentence reduction is not inconsistent "with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

**E.   TAPIA HAS PROPERLY EXHAUSTED HIS ADMINISTRATIVE REMEDIES REGARDING HIS ADMINISTRATIVE REMEDIES REGARDING HIS REQUEST FOR COMPASSIONATE RELEASE.**

On March 25, 2019, movant submitted an Inmate Request to Staff, BP.A148055 addressed to Warden Swain in requesting Compassionate Release under the First Step Act of 2018. The request was sent to the E/F Unit team and answered by the E/F Unit Team on May 6 2019 (See Exhibit A). Movant spoke with the E/F Unit Team and explained what he was seeking regarding Compassionate Release and requested that his request be submitted to Warden Swain. The Unit Team then presented movant with Warden Swain's Response dated April 1, 2019 (See Exhibit B).

On April 15, 2019, Movant was given a form from the Victorville Federal Medical Center concerning Compassionate Release (See Exhibit C-1 and C-2). Movant filled out the form and returned it to the Medical Department. Movant

marked the box for the category which he was requesting, Compassionate Release as for inmates over 65 years of age or older who have served more than 75% of the term of imprisonment to which the inmate was sentenced by blacking in the entire box.  However, some BOP staff member marked a different box with an [X] on the category based on inmates over 65 with medical conditions who have served more than 50% of sentence.

Four months later, on August 29, 2019, Warden Swain responded to movant's request for Compassionate Release misconstruing movants request for Compassion Compassionate Release as one for consideration under Section 4.b., Elderly Inmates with Medical Conditions under PS 5050.50 (See Exhibit D).  BOP staff and Warden Swain have deliberately circumvented and misconstrued movants issues and reasons for requesting release or reduction of sentence pursuant to a Compassionate Release by evading the actual reasons for the request.

The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow District Courts to modify sentences of imprisonment upon motion by the defendant if "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier..." § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C.§ 3582(c)(1)(A)).  Tapia's initial request was filed on March 25, 2019 (Exhibit A), and finally denied by Warden Swain on August 29, 2019 (Exhibit D).  This movant has completed his duties to exhaust his administrative remedies and the Honorable Court has jurisdiction to reduce his sentence.

## STATEMENT OF THE CASE

On November 28, 1989, Petitioner and four co-defendants were named in a six count Indictment, the first five counts chanrging all of them with

either conspiracy to possess with intent to distribute a controlled substance (cocaine) pursuant to 21 USC § 846 possession with intent to distribute a controlled substance (cocaine) pursuant to 21 USC § 841(a)(1). Count Six charged Petitioner alone with participating in a Continuing Criminal Enterprise pursuant to 21 USC § 848(b).  Petitioner was arraigned and entered pleas of not guilty to all counts.

On September 18, 1990, a jury was empaneled and trial commenced, ending on November 6, 1990, with the jury returning verdicts of guilty to all counts as to Petitioner's co-defendants, but unable to return a verdict regarding any counts against Petitioner, the Court then declaring a mistrial regarding him alone.

On    December 18, 1990, a superceding Indictment was returned charging Petitioner with the same six violations/counts.

On October 13, 1992, Petitioner's second jury trial began, ending on December 22, 1992, with the jury returning verdicts of guilty to all counts.

On January 24, 1994, Petitioner was sentenced to five terms of forty years imprisonment for Counts One through five, and a term of life imprisonment for Count Six.  That same day Petitioner filed his Notice of Appeal which was litigated throughout the next eighteen months before the U.S. Court of Appeals for the Ninth Circuit which affirmed Petitioner's convictions and sentences on July 24, 1995, Appeal No. 94-50075.

On April 29, 1998, Petitioner filed his Motion To Vacate Convictions and Sentences pursuant to 28 USC § 2255, none of the issues raised therein being the issues raised herein, said Motion being denied on April 22, 1999.

On May 3, 1999, Petitioner filed his Notice of Appeal and Petition For Certificate of Appealability in the District Court which denied said Petition on June 14, 1999, afterwhich Petitioner filed his Petition for Certificate of Appealability to the United States Court Of Appeal For The

Ninth Circuit on July 7, 1999, which denied said Petition on January 25, 2000.

On June 1, 1999, during the pendancy of Petitioner's Petition For Certificate of Appealability before the trial/District Court, the United States Supreme Court rendered its decision entitled **Richardson -v- United States,** 526 U.S. _____, 143 L.Ed.2d. 985, 119 S.Ct. 1707, U.S. LEXIS 3640 (1999).

In February, 2000, Petitioner filed his Petition For Writ Of Habeas Corpus in the U.S. District Court of Colorado in which he presented his Jones and Richardson arguments which are **I, II,** and **III** hereof attacking only Count Six of the Indictment/his conviction of violating 21 USC § 848/"engaging in a continuing criminal enterprise" of which Petitioner was the "organizer" and "from which [he] obtained substantial income", (Case No. 00-WM-525 of that court).

On June 26, 2000, the United States Supreme Court rendered its decision entitled **Apprendi -v- New Jersey** which  argument **IV** hereof is based upon. Shortly thereafter Petitioner was, against the law which governs jusrisdiction of courts entertaining petitions for writs of habeas corpus, transferred to the Federal Corr. Inst. at Phoenix, AZ., thereby removing petitioner from the jurisdiction of the U.S. District Court of Colorado.

On January 31, 2001, said court denied Petitioner's Petition For Writ Of Habeas Corpus finding that he had not demonstrated he was prevented/"barred" from seeking the relief he sought via 28 USC § 2255. This petition follows.

### ARGUMENT

### TAPIA HAS EXTRAORDINARY AND COMPELLING REASONS JUSTIFYING A SENTENCE REDUCTION PURSUANT TO COMPASSIONATE RELEASE.

First, Tapia received an unusually long sentence for a conviction of the Continuing Criminal Enterprise Statutes pursuant to 21 U.S.C. § 848(b) and was given a leadership role under a pre-Booker United States Sentencing Guidelines (USSG) enhancement, which the Supreme Court found in 2005 in **United States v. Booker**, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005) that the guidelines were not mandatory.  At the time of movant's sentence they were. Then in 2013, the Supreme Court found in **Alleyne v. United States**, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), all facts used to raise a defendant's sentence must be found by a jury.

Second, Congress has, since movant's sentence, found the penalty provisions under 21 U.S.C. § 841 excessively harsh and draconian, but has not made those recent changes retroactively applicable.  See 21 U.S.C. § 841( 841(b)(1)(A), as amended P.L. 115-391, 132 State. 5194, at § 401(i)-(ii)(c) (Dec. 21, 2018).

Third, Tapia received an effective life sentence due to a trial penalty for exercising his fundamental constitutional rights.  If he had, instead, entered a guilty plea  and taken a plea agreement, he would have been at home with his family over a decade ago.

Fourth, Tapia was erroneously found by the District Judge to be eligible for a leadership role, which at the  time was binding on the Court.  However, since the **Booker** and **Alleyne** decisions it is now the Jury's duty to find defendants accountable for enhancements such as leadership roles.  The USSG Guidelines were at the time of the movant's conviction and sentencing mandatory, but now, even with the rulings of **Booker** and **Alleyne**, the restriction in place within the A.E.D.P.A., movant does not have a jurisdictional vehicle to re-enter the guarded gates of the Court to request resentencing.  With the passage of the First Step Act of 2018, Congress

concluded that the mandatory minimums arising from 21 U.S.C. § 841(b)(1)(A) provisions were punitive and unfair.

Tapia's life sentence for a non-violent drug offense, pursuant to 21 U.S.C. § 841(a)(1), Participating in a Continuing Criminal Enterprise pursuant to 21 U.S.C. § 848(b) and an erroneously applied pre-**Booker** Sentencing Guidelines Leadership Role enhancement certainly adds to a determination that there are extraordinary and compelling reasons for a sentence reduction. And this is so, even thoughCongress failed to make the changes to § 841(b) and § 848(b) retroactively applicable to cases in which the sentence was imposed prior to the First Step Act of 2018's enactment. See P.L. 115-391, 132 Stat. 5194, and § 401(i)-(ii)(c) (Dec 21, 2018) (Applicability to pending cases. This section, and the amendments made by this section, shall apply to any offense that  was committed before the date of the enactment of this Act, if the sentence for the offense has not been imposed as of such date of the enactment."). Had Congress made the changes retroactively applicable to all, every defendant sentenced under § 841(b) to a mandatory 20 year sentence with one prior conviction, or a life sentence with two or more prior drug conviction convictions would have been categorically eligible for a reduction of sentence. By Contrast, those defendants sentenced under § 841(b) and § 848(b) provisions and seeking relieve under the Compasssionate Release provisions must establish extraordinary and compelling reasons individually in order to be eligible for relief. That Congress chose to foreclose all means of redressing draconian sentences imposed under § 841 and § 848, there is nothing about Congress's decision to pass prospective-only changes to § 841(b) prevents the Court from resentencing Tapia under the Compassionate Release Statute on the basis of individualized extraordinary and compelling reasons.

There is an additional reason why Tapia's sentence presents extraordinary circumstances. Tapia received such a long term of imprisonment, not due to his culpability, but due to a trial penalty. By rejecting a plea bargain and

15

exercising his right to a jury trial, Tapia consequently received a life sentence under the mandatory guideline regime. See **Gall v. United States**, S. Ct. 586 (2007) (Second looks at substantive sentences includes "significant" procedural errors includ[ing] errors such as "failing to calculate (or improper improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence base based on clearly erroneousfacts or failing to adequately explain the chosen sentence - including an explanation for any deviation from the Guideline range."). **Gall**, 2007 U.S. Lexis 13083, 2007 WL 4292116, at *7. That someone could receive an effective sentence of life without parole for exercising the right to a jury trial is inconsistent with notions of fundamental fairness, and one way to remedy such injustices is through "second looks," whereby "[a]fter substantial service of a sentence, courts review lengthy sentences to ensure that sentences are proportionate over time." Tapia has now served over thirty years of imprisonment, and his sentence is grossly disproportionate to the crimes he committed, another extraordinary and compelling reason.

Fifth, as stated in Warden Swain's denial of Tapia's Request for Compassionate Release under the First Step Act, (Exhibit D), Warden Swain, determined that Tapia is over 65 years of age and has served at the time of the denial 29 years and 10 months of his sentence, which at the time of preperation of this motion is over 30 years of said sentence. Warden Swain went on to determine that Tapia's records indicate that he has cronic or serious medical conditions related to the aging process. She went on to state in her denial that was not experiencing deteriorating mental or physical health that substant substantially diminishes his ability to function in a correction facility as evidenced by his ability to independently perform his instrumental activities of daily living (iADLs)

Movant has spent 30 years of his life in a prison on this life sentence an and now is a very old and feable man weighing right at a hundred pounds. Tapia

Tapia shuffles around the dangerous halls and over the tretcherous sidewalks of this young man's prison doing hisbest to slowly make it to the dining hall to try and eat and then back to his housing unit where all he can do is sit quietly and watch television. Tapia cannot protect himself from the young predator inmates in this harsh prison environment. Tapia's personal property is constantly taken from him by the young brutal inmates. Tapia cannot fight back, he is only a 100 lb. old man who can hardly arise from his hard steel bunk much less fight a hoard of 20 year old gang-banging sociopaths.

Movant meets the age-relateddefinition of extraordinary and compelling circumstances in U.S.S.G. § 1B1.13 comment (n. 1(B)). He is 68 years old, he is experiencing serious deterioration in physical health because of the aging process and he has served 30years in prison.

Movant also meets the Other Elderly Inmates requirements definition of extraordinary and compelling circumstances in PS 5050.49(4)(c), Inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment. Tapia is 68 years of age and has served 30years in prison, even though Warden Swain attempted to misconstrue Movant's Request for Compassionate Release.

Sixth, Tapia also meets the requirements of U.S.S.G. § 1B1.13 Comment (n. (1)(D)), which permits a reduction when "there exists in defendant's case an **extraordinary and compelling** reason other than, or in combination with, "the remainder of the Guidelines definition[4]. Such a combination of factors

---

4. Application Note 1(D), as currently written, provides that such combination of circumstances will be "[a]s determined by the Director of the Bureau of Prisons." However, the current policy statement predates the encactment of the First Step Act and not likely to be amended within the forseeable future due to lack of a sufficient number of serving members of the Sentencing Commission. See **United States v. Handerhan**, NO 1:10-cr-00298, 2019 WL 1437903 at *1 n.4 (M.D. Pa 2019)(unpublished). Because of current versions of the Guidelines policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect. See **United States v. Conrado-Cantu**, no 1:05-cr-458-1. Order at 6-11(S.D. Tex. June 17, 2019).

is present in Tapia's case.  Aside from the age related  factors previously discussed, there is the extraordinary degree of rehabilitation Tapia has accomplished during the 30 years of his incarceration up until his health began to fail due to the aging process.  That rehabilitation includes extensive educational achievements, completing his GED, ACE classes, English-as-a-second language, multiple trades oriented classes, and several psychological Living Skills Programs.  (Exhibit E)

There is also a very important and very rare factual item of evidence which exists in defendant's case as being an extraordinary and compelling reason other than, or in combination with, the remainder of the Guideline definition noted supra on page 17 at footnote 4., that shows exactly what kind of man Tapia has evolved into.  The rarity of this extraordinary factual item of evidence out-trumps every other possible piece of compelling evidence, is that it shows that Mr. Tapia is supported by Federal Bureau of Prison's high ranking staff members who  deal with Mr. Tapia on a daily basis.  On page 4 of Mr. Tapia's "Summary Reentry Plan - Progress Report" the Unit Team stated in the Release Planning Section:

> Inmate Anchondo is serving a sentence of LIFE.  He will
> not be eligible for RRC placement.  Although, it is my
> belief that he's served his time for his offense, and
> should be released to his country of origin, which is
> Mexico.

and then in the General Comments Section, the Unit Team concluded with this extraordinarily rare statement:

> Inmate Anchondo is the most pleasant inmate I've come
> across in my career in the Bureau of Prisons.  He alway
> always has a positive message to pass on to staff
> members and fellow inmates.  He does not get involved i
> in negative inmate behaviors and tends to keep to himse
> himself.  He is extremely respectful to staff members,
> and although he is serving a life sentence, he tries to

> keeps his spirits high.  Anchondo was sentenced in 1994
> and if there was any inmate that deserved to get his se
> sentence commuted to Time Served, its him.  He has been
> incarcerated for a total of 30 years, and has never cre
> created any problems during his 30 year term.  My hopes
> for this inmate is for him to experience his well deser
> deserved freedom while he's still healthy enough to
> enjoy it.

There is also the factor in this combination, the fundimental change to sentencing policy carried out in the First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendant's prior convictions IE 401(a)(2)(A)(ii), 132 Stat. at 5220 (Codified at 21 U.S.C. § 841(b)(1)(A)).  The combination of all these factors establishes the extraordinary and compelling reasons justifying the reduction of sentence.

Seventh, Hector Tapia, now nearly 70 years of age, an old man, does not present a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" U.S.S.G. § 1B1.13(2).  Although Tapia was convicted of serious but not violent offenses, the evidence of rehabilitation during the intervening 30 years, the extensive and close ties that Tapia maintains with his family here in the United States and Mexico, the evidence of the limitations that are now placed on Tapia's physical abilities, and the fact that Mr. Tapia will be returning to his native Mexico to live out the few remaining years or months of his life surrounded by his children, grandchildren, great-grandchildren, and great-great-grandchildren who will all take proper care of their patriarch show that Mr. Hector Tapia presents no danger upon release.

Finally, eighth, Tapia requests that the court consider the factors set out in 18 U.S.C.§ 3553(a), and conclude that, in light of the changed circumstances explained above, a sentence of time served, representing 30 years in prison, reflects the seriousness of the offense, promotes respect for the law and provided just punishment, 18 U.S.C. § 3553(a)(2)(A).  Showing

that this sentence will also avoid unwarranted disparities among defendants with similar records convicted of similar conduct in this same case because this 30 year sentence exceeds the sentences imposed on the other members of the drug-trafficking conspiracy 18 U.S.C. 3553(a)(6).  Mr. Tapia requests that this honorable court conclude that Mr. Tapia does not represent a danger to any person or the community and conclude that this sentence has served and continues to serve as an adequate deterrence and to protect the public from further crimes of the movant which, given Mr. Tapia's age and rehabilitation, and that the court be assured will not occur 18 U.S.C. § 3553(a)(2)(B)(C).

## CONCLUSION

For the foregoing reasons, Mr. Hector Tapia's prayer is that this Honorable Court takes a second look at movant's excessive life sentence, modify it to time served, and or any other sentence that this Court deems just and appropriate.

Respectfully submitted on this ____29____ day of ___October___ , 2019.

H.T. Anchondo.
Hector Anchondo Tapia
Reg. No. 25730-048
VIM-I
P.O. Box 3725
Adelanto, CA 92301

# CERTIFICATE OF SERVICE

I, <u>HECTOR TAPIA ANCHONDO</u>          hereby certify that I have served a true
and correct copy of the following:

Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A)


<u>Which is deemed filed at the time it was delivered to prison authorities for</u>
<u>forwarding</u>, **Houston v. Lack**, 101 L.Ed.2d 245 (1988), upon the defendant/
defendants and or his attorney/attorneys of record, by placing same in a
sealed, postage prepaid envelope addressed to:

U.S. Attorney's Office
Central District of California
312 N. Spring St. 1200 US Courthouse
Los Angeles, CA 90012


**and deposited same in the United States Mail** at the Federal Correctional
Institution, Victorville-One in Adelanto, CA 92301

I declare, under penalty of perjury (Title 28 U.S.C. §1746), that the
foregoing is true and correct.



Dated this _30_ day of _October_          , 20_19_ .

                                    _H. T. Anchondo_
                                    HECTOR TAPIA ANCHONDO 25730-048
                                    VIM-1
                                    P.O.BOX 3725
                                    ADELANTO, ca 92301

BP-A148.055
SEP 98
**INMATE REQUEST TO STAFF**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Unit Team (Manager) | 3/25/2019 |
| FROM: Hector Anchondo Tapia | REGISTER NO.: 25730-048 |
| WORK ASSIGNMENT: Unasignn | UNIT: F/L - #220L |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary.  Your failure to be specific may result in no action being taken.  If necessary, you will be interviewed in order to successfully respond to your request.

Under the First step Act of 2018, I qualify to the "elderly offender and compassionate release". Please, can you help me in this matter.

Thank-You
H.T.A

(Do not write below this line)

DISPOSITION:

Please come to Unit Manager (E/F) open house so we can ~~go~~ go over all of your options + reasons for a compassionate release. Thank You.

| Signature Staff Member | Date |
|---|---|
| M. Saul | 5/6/19 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

**SECTION 6**

Exhibit A



Name:  Anchondo, Hector Tapia
Register No.: 25730-048
Unit: F1/2

---

This is in response to your Inmate Request to Staff received in
this office on March 25, 2019.  In your request, you state that
you qualify for a Compassionate Release/Reduction in Sentence as
an eligible elderly offender.

Your request was presented to your unit manager.  The Department
of Justice is currently conducting a risk and needs assessment
of the new criminal law titled, "First Step Act," signed into
law by the President.  This law is not effective immediately nor
is applicable to every case.  The law will be effective once the
assessment is released by the Attorney General.  If your case is
applicable to this law, re-computation of your sentence will
occur upon the effective date.

I trust this response addresses your concerns.


_____                    _____
. L. Swain, Warden                          Date


*Exhibit B*

Tapia Copy



**Federal Medical Center, Victorville**
**Health Services**

Form: Inmate Request for Compassionate Release Consideration

| TO: Ms. Harris | DATE: 4/15/19 |
|---|---|
| **MEDICAL SOCIAL WORK/FCI I** | |
| FROM (print): Anchondo, Hector | **REGISTER NO:** 25730-048 |
| Signature: | **UNIT:** F-Lower, VIM-I |

**Instructions:** In order to be considered for Compassionate Release, you must complete this form and send it to the Medical Social Worker. The information will be used to determine if your request for Compassionate Release meets the minimum criteria for consideration, as referenced in the Program Statement 5050.49, Compassionate Release/Reduction in Sentence. The Social Worker will meet with you regarding your request.

1. Check the category you are requesting Compassionate Release Consideration: (only one per request)

- ☐ Request based on Medical Circumstances (Terminal or Debilitated)
- ☒ Request based on Elderly Inmates over 65 with Medical Conditions who have served more than 50% of sentence
- ☒ Request based on inmates age 65 or older who have served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced
- ☐ Request based on Death or Incapacitation of the Family Member Caregiver where you are the only caregiver for your minor child
- ☐ Request based on Incapacitation of a Spouse or Registered Partner where you are the only available caretaker

2. Explain the extraordinary or compelling circumstances which could not have been foreseen at the time of your sentencing you believe warrant Compassionate Release consideration. Continue on back, if necessary.

SEE CONTINUATION PAGE

3. Explain your proposed Release Plans and continue on back, if necessary. The information should include the following detailed information:
   1. Address and phone number of where you plan to live.
   2. Your family supports in the community.
   3. How you plan to cover your medical expenses and support yourself.
   4. Where continued health treatment and services will be received.

SEE CONTINUATION PAGE

Sensitive Limited Official Use Only
A copy of this form will be kept in the Medical Record section 6 and Inmate's Central File, and the original will remain with the Medical Social Worker.
Sept 2007
Rev 039

Exhibit C-1

INMATE REQUEST FOR COMPASSIONATE RELEASE CONTINUATION PAGE

HECTOR TAPIA ANCHONDA          # 25730-048          VIM-I     F-Lower

Section 1.  CATEGORY FOR COMPASSIONATE RELEASE

My request is based on Program Statement 5050.50 Section (4)(c), 18 U.S.C. §
3582(c)(1)(ii) and 4204(g).
I qualify because I am age 67, and have served 30 years of my sentence.

Section 2.  EXTRAORDINARY OR COMPELLING CIRCUMSTANCES

I believe that compasionate release should be given to me because I am an
elderly inmate who has completed 30 years of my time and that my age is a
threat to the safe and secure operation of any prison in the BOP. I do have
problems functioning in this harsh prison environment.

Section 3.  PROPOSED RELEASE PLAN

My release plan consists of, first, being deported to Mexico where I will
live out the remainder of my life with my sister  in the home that I own.
My sister will be my caregiver and any medical bills will be taken care
of by ISSTE SEGURO SOCIAL OF MEXICO, which will alleviate any burden upon
the United States.

SISTER:
Maria Auror Tapia Anchonda
Calzada del Rio # 8316, Casa 1
Villa Campestre
Cd. Juarez Chih.  CP 32560

Cell phone: 011 52 1 656-191-9201

Personal Information

DOB 07/25/51
Arrest date: 09/28/1989
Sentence: Life
Charge: RICO

Exhibit C-2

220



Inmate Name: ANCHONDO, Hector
Register No.: 25730-048
FCI I Victorville – F-Lower

This is in response to your correspondence dated April 15, 2019, in which you request to be
considered for a reduction in sentence (RIS) in accordance with Program Statement 5050.50,
<u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C.
3582(c)(l)(A) and 4205(g)</u>, dated January 17, 2019.  Specifically, you requested consideration
under Section 4.b., Elderly Inmates with Medical Conditions.

In reviewing the criteria for the provision noted above, it was determined you are over 65 years
of age and have served 29 years and 10 months of your sentence.  In addition, records indicate
you have chronic or serious medical conditions related to the aging process.  However, you are
not experiencing deteriorating mental or physical health that substantially diminishes your ability
to function in a correctional facility as evidenced by your ability to independently perform your
instrumental activities of daily living (iADLs).

After careful review of this information, your request for Compassionate Release/RIS is denied.
In accordance with Program Statement 5050.50, you may appeal this decision through the
Administrative Remedy Program.

Health Services staff will continue to monitor your conditions as clinically indicated.  I suggest
you work with your designated medical providers to address your needs, as they may arise.

I trust this addresses your request.

_____               **8.29.19**
C. Swain, Warden                                         Date

*Exhibit D*



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ANCHONDO, HECTOR TAPIA  25730-048

**SEQUENCE: 00139431**
**Report Date: 10-24-2019**

| | | | |
|---|---|---|---|
| Facility: | VIM  VICTORVILLE MED I FCI | Custody Level: | IN |
| Name: | ANCHONDO, HECTOR TAPIA | Security Level: | MEDIUM |
| Register No.: | 25730-048 | Proj. Rel Date: | UNKNOWN |
| Quarters: | F02-220L | Release Method: | LIFE |
| Age: | 68 | DNA Status: | VVM03543 / 05-18-2011 |
| Date of Birth: | 07-26-1951 | | |

### Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 21 USC 848, CONTINUING IN A CRIMINAL ENTERPRISE, CT 6 21 USC 846, 841(A)(1) CONSPIRACY, P/W/I/T/D COCAINE, CTS 1-5 | LIFE |

Date Sentence Computation Began:     01-24-1994
Sentencing District:     CALIFORNIA, CENTRAL DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 /    0 /    0 | 0 | Years: 30 Months: 0 Days: | + 1578    JC - 0    InOp |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

### Pending Charges

ICE

### Program Plans

Inmate Anchondo is a citizen of Mexico, and is not required to take RPP classes.  Although, he tends to keep himself busy via exercising on the recreation yard.

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| VIM | UNASSGN | UNASSIGNED NEW INMATES | 10-03-2019 |

### Work Assignment Summary

Inmate Anchondo is unassigned from work.  He chooses to spend his idle time on his health and fitness.

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| VIM | ESL HAS | ENGLISH PROFICIENT | 03-31-1994 |
| VIM | GED HAS | COMPLETED GED OR HS DIPLOMA | 03-31-1994 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| VIM | C | RPP FCC AIDS AWARENESS (C1) | 07-05-2018 | 07-05-2018 |
| VVM | C | ADVANCED CROCHET CLASS | 10-11-2014 | 11-29-2014 |
| VVM | C | HOME WIRING, FRI., 6:30 P.M. | 07-09-2010 | 09-03-2010 |
| VVM | C | VT COMPUTER 12-2:00 P.M. M-F | 03-31-2009 | 06-24-2009 |
| VVM | C | ACE AUSTRALIA | 12-29-2008 | 01-16-2009 |
| VVM | C | RPP FCI FATHER SUPPORT (C6) | 02-07-2008 | 03-16-2008 |
| VVM | C | INTRO TO LEGAL RESEARCH | 04-17-2006 | 06-22-2006 |
| VVM | C | PARENTING | 02-17-2006 | 05-09-2006 |
| PHX | P | APP ELECT UTIL WRK 6000 HRS | 04-01-2003 | 05-16-2005 |
| PHX | W | ELECTRONICS AD 3:30-5:30 | 03-28-2001 | 06-06-2001 |
| PHX | C | ELECTRONICS VT PROGRAM | 02-06-2001 | 06-05-2001 |
| PHX | C | ELECTRONICS BASIC 4C | 02-06-2001 | 03-28-2001 |
| PHX | C | RPP/HLTH - AIDS AWARENESS | 01-30-2001 | 01-30-2001 |

*Exhibit E*



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ANCHONDO, HECTOR TAPIA   25730-048

SEQUENCE: 00139431
Report Date: 10-24-2019

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| LOM | W | ESL 9:30-11:30 AM MS. SHIFFRAR | 03-18-1994 | 05-10-1994 |

### Education Information Summary

Inmate Anchondo is educated and has his High School diploma.

### Discipline Reports

| Hearing Date | Prohibited Acts |
|---|---|
| 05-12-2003 | 397 : PHONE ABUSE - NO CIRCUMVENTION |

### Discipline Summary

Inmate Anchondo is not a management concern.  He is the contrary.  He does raise any disciplinary concerns to the unit team.

### ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|---|---|---|---|---|
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 10-03-2019 | CURRENT |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 09-25-2019 | 10-03-2019 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 09-20-2019 | 09-25-2019 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 09-09-2019 | 09-20-2019 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 06-24-2019 | 09-09-2019 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 06-11-2019 | 06-24-2019 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 05-10-2019 | 06-11-2019 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 02-13-2019 | 05-10-2019 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 12-14-2018 | 02-13-2019 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 11-26-2018 | 12-14-2018 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 10-24-2018 | 11-26-2018 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 09-28-2018 | 10-24-2018 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 08-22-2018 | 09-28-2018 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 08-17-2018 | 08-22-2018 |
| VIM | A-DES | OTHER AUTH ABSENCE RETURN | 07-18-2018 | 08-17-2018 |
| VIM | A-DES | TRANSFER RECEIVED | 06-06-2018 | 07-18-2018 |
| VVM | A-DES | OTHER AUTH ABSENCE RETURN | 05-07-2018 | 06-06-2018 |
| VVM | A-DES | OTHER AUTH ABSENCE RETURN | 05-03-2018 | 05-07-2018 |
| VVM | A-DES | OTHER AUTH ABSENCE RETURN | 03-25-2018 | 05-03-2018 |
| VVM | A-DES | OTHER AUTH ABSENCE RETURN | 09-28-2017 | 03-21-2018 |
| VVM | A-DES | OTHER AUTH ABSENCE RETURN | 08-20-2007 | 09-28-2017 |
| VVM | A-DES | TRANSFER RECEIVED | 10-03-2005 | 08-20-2007 |
| PHX | A-DES | TRANSFER RECEIVED | 01-24-2001 | 10-03-2005 |
| FLP | A-DES | OTHER AUTH ABSENCE RETURN | 11-16-1995 | 01-12-2001 |
| FLP | A-DES | OTHER AUTH ABSENCE RETURN | 11-03-1995 | 11-16-1995 |
| FLP | A-DES | TRANSFER RECEIVED | 06-23-1995 | 11-03-1995 |
| LOM | A-DES | TRANSFER RECEIVED | 03-15-1994 | 06-23-1995 |

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 01-07-2005 |
| CARE1-MH | CARE1-MENTAL HEALTH | 11-17-2010 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| LOWER BUNK | LOWER BUNK REQUIRED | 03-05-2018 |
| NO F/S | NO FOOD SERVICE WORK | 03-16-1994 |
| PAPER | LEGACY PAPER MEDICAL RECORD | 06-29-2019 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 02-22-2016 |
| SOFT SHOES | SOFT SHOES ONLY | 04-02-2018 |

### Current PTP Assignments

| Assignment | Description | Start |
|---|---|---|



## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ANCHONDO, HECTOR TAPIA   25730-048

SEQUENCE: 00139431
Report Date: 10-24-2019

| Assignment | Description | Start |
|------------|-------------|-------|

NO ASSIGNMENTS

### Current Drug Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| ED COMP | DRUG EDUCATION COMPLETE | 11-03-1999 |

### Physical and Mental Health Summary

Inmate Anchondo takes the initiative to put his health as his first priority while he serves his sentence.  The unit team believes that this is beneficial to his outlook on life and prevents him from adhering to negative thinking and behaviors.

### FRP Details

Most Recent Payment Plan

| FRP Assignment: | **NO OBLG** | **FINANC RESP-NO** | | **Start: 02-28-2019** |
|---|---|---|---|---|
| Inmate Decision: | **AGREED** | **$50.00** | Frequency: | **MONTHLY** |
| Payments past 6 months: | **$0.00** | | Obligation Balance: | **$0.00** |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | FINE | $48,000.00 | $47,600.00 | IMMEDIATE | EXPIRED |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

### Financial Responsibility Summary

Inmate Anchondo does not have any financial obligations to fulfill at this time.  His fine has expired.

### Release Planning

Inmate Anchondo is serving a sentence of LIFE.  He will not be eligible for RRC placement.  Although, it is my belief that he's served his time for his offense, and should be released to his country of origin, which is Mexico.

### General Comments

Inmate Anchondo is the most pleasant inmate I've come across in my career in the Bureau of Prisons.  He always has a positive message to pass on to staff members and fellow inmates.  He does not get involved in negative inmate behaviors and tends to keep to himself.  He is extremely respectful to staff members, and although he is serving a life sentence, he tries to keeps his spirits high.  Anchondo was sentenced in 1994, and if there was any inmate that deserved to get his sentence commuted to Time Served, its him.  He has been incarcerated for a total of 30 years, and has never created any problems during his 30 year term.  My hopes for this inmate is for him to experience his well deserved freedom while he's still healthy enough to enjoy it.

Hector Tapia A25730-048
Federal Correctional Institution—One
Po Box 3725
Adelanto, CA 92301

"Legal Mail"

NOV – 6 2019
CLERK US DISTRICT COURT
CENTRAL DIST OF CALIFORNIA

7010 0780 0000 4583 9295

25730-048
Central Distri Of California
# 312 N Spring St
#410 Judge T J Hatter Jr.
LOS Angeles, CA 90012
United States













#25730-048

